AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 2 6 2015

MATTHEW J. DYKMAN
**CLERK**

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| the proceeds, contents and any US currency | )  Case No. MR 15-663 |
| contained in Bank of America account # | ) |
| 435017473826 | ) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____ New Mexico _____ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981,982___ *(describe the property)*:

the proceeds, contents and any US currency contained in Bank of America, held in the business name of Sterling Islands dba Rox Fine Silver.  See attached affidavit for further description.

The application is based on these facts:
Based on the facts set forth herein, I believe there is probable cause to seize the account identified.  There is probable cause to believe that this bank account is property involved in transactions in violation of 18 USC §1957.  Therefore, the funds in the bank account are subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), and subject to seizure and criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), and 981(a)(1)(C) and 28 U.S.C. §2461(c).

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Special Agent Russell Stanford
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __October 26, 2015__

_____
*Judge's signature*

City and state:  Albuquerque, NM

Chief United States Magistrate Judge Karen B. Molzen
*Printed name and title*

DISTRICT OF NEW MEXICO
ALBUQUERQUE, NEW MEXICO

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Russell Stanford, a Special Agent of the United States Fish and Wildlife Service, Office of Law Enforcement (USFWS/OLE), United States Department of Interior, having been duly sworn, depose and state:

### EXPERIENCE AND TRAINING

1.  I am a Special Agent (SA) of the Department of Interior, U.S. Fish and Wildlife Service (USFWS) and have been so employed since August of 2008.  In that capacity I have been assigned to investigate a broad spectrum of wildlife crime; to include smuggling of protected wildlife, the take and/or sale of endangered species, and the illegal trade in eagle parts and products.  The investigation of those crimes involved secondary investigation of related financial crimes for which I was also responsible.  Prior to that, I served six years as a Wildlife Inspector with the USFWS at the port of New York.  In that capacity, I searched and inspected counterfeit and contraband goods imported into the United States.  I earned a Bachelor's Degree in Wildlife Management at Frostburg State University in Frostburg, Maryland.  I have approximately thirteen years of law enforcement experience, including as the lead case agent or assisting agent on several large white collar investigations which have resulted in numerous seizure, search, and arrest warrants.  I have been assigned as the case agent attached to the Department of Interior, Indian Arts and Crafts Board since March of 2012.  As such, I am currently responsible for investigating violations of the Indian Arts and Crafts Act.

2.  In addition to my professional experience, I successfully completed the Criminal Investigator Training Program and the USFWS Special Agent Basic School at the Federal Law Enforcement Training Center (FLETC).  The curricula included instruction regarding the investigation and documentation of financial crime.

3.  The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other employees of the USFWS/OLE, including USFWS/OLE agents and Wildlife Inspectors, and from records and documents that I, and others, have reviewed.

### PROPERTY TO BE SEIZED

4.  I make this affidavit in support of an application by the United States of America for a Seizure Warrant authorizing the seizure of bank account number **435017473826**, held in the business name of **Sterling Islands, d.b.a., Rox Fine Silver and National Jewelry Buyers (hereinafter, "Sterling")** at Bank of America, Bank of America Corporate Center, 100 N. Tryon St., Charlotte, NC 28255.  The signatories on this account are Sheda J. Khalaf (President) and Jawad T Khalaf (V. President).

5.  There is probable cause to believe that this bank account is property involved in transactions in violation of 18 U.S.C. § 1957.  A significant portion of the funds in this bank account were derived from proceeds traceable to violations of 18 U.S.C. § 542 (import by

fraudulent practice) and/or 18 U.S.C. § 1343 (wire fraud).  And from those funds, Sterling Islands entered into a series of transactions exceeding $10,000.  Therefore, the funds in the bank account are subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), and subject to seizure and criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), and 981(a)(1)(C) and 28 U.S.C. §2461(c).

6.   More specifically, there is probable cause to believe that the bank account numbered **435017473826** has been used to:

    a.   transfer funds from Sterling  to Fashion Accessories 4 U, Corp., a Philippine jewelry manufacturer, for the production of Native American-style jewelry in the Philippines, all of which is then imported into the United States in violation of 18 U.S.C. § 542; 19 U.S.C. § 1304; 19 C.F.R. § 134.43(c).

    b.   accept payments from retail stores and wholesalers for the sale of the imported Native American-style jewelry.  These retail and wholesale establishments are in the business of fraudulently selling the Sterling-imported jewelry as genuine Native American-made items in violation of 18 U.S.C. § 1159;

    c.   accept or cause wire transmissions to further this scheme and artifice to defraud the end consumer of real Native American items in violation of 18 U.S.C. § 1343; and

    d.   engage in monetary transactions exceeding $10,000 with these funds, which are criminally derived from specified unlawful activities in violation of 18 U.S.C. § 1957.

7.   Since this affidavit is being submitted for the limited purpose of securing a seizure warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe necessary to demonstrate probable cause for the issuance of the requested seizure warrant.

**PROBABLE CAUSE**

8.   In April of 2012, I initiated an investigation into the importation and subsequent sale of Native American-style jewelry in violation of 18 U.S.C. §1159(a).  My investigation revealed that Sterling located at 5815 Menaul Blvd. NE in Albuquerque, N.M., d.b.a. National Jewelry Buyers and Rox Fine Silver, has been importing Native American-style jewelry from the Filipino company, Fashion Accessories 4 U Corp. (FA4U) for several years.

9.   Sheda Khalaf and Jawad Tawfiq Khalaf are listed as the President and Vice President of Sterling, respectively.  Furthermore, research reveals that Jawad Khalaf and Nader Khalaf were listed as Directors and Officers of FA4U by the Philippines Securities and Exchange Commission on 11/12/2006.  Consultation with other agents, and general biographical data, supports that Jawad Tawfiq Khalaf is the father of Nader Jawad Khalaf and Sheda Khalaf.

10. From October 28, 2010 to October 10, 2015, Sterling has declared to the USFWS, upon importation from FA4U, 298 shipments of jewelry with a total declared value of approximately $5 million.  This number significantly underrepresents the true value of the imports because of inconsistencies in the declaration method applied by Sterling.  My financial investigation approximates a true declared value of $11.8 million in imported jewelry for the same time period.  Sterling is required to declare their commercial importations into the U.S. to the USFWS, as they contain wildlife products (shell products, etc.).  All of these shipments listed FA4U as the foreign supplier and Sterling as the US importer.  And all of the import declarations claim similar products consistent with the importation of Native American-style jewelry.

11. An examination of Sterling's financial records for a similar time period revealed **$6,355,599.89** in payments from Sterling to FA4U from June 18, 2010 to July 17, 2014.  The payments were made by international wire transfer drawn on a Sterling account with Bank of America (Acct. # **435017473826**) to the FA4U Philippine account held with the Metropolitan Bank and Trust (Acct. #002236004389).  Each of those 130 payments exceeded the $10,000 threshold required to violate 18 U.S.C. § 1957.

| Date | Sender | Amount | Payee |
|---|---|---|---|
| 6/18/2010 | Sterling (…3826) | $55,812.27 | FA4U (002236004389) |
| 6/23/2010 | Sterling (…3826) | $40,435.68 | FA4U (002236004389) |
| 7/03/2010 | Sterling (…3826) | $61,696.90 | FA4U (002236004389) |
| 7/10/2010 | Sterling (…3826) | $25,385.60 | FA4U (002236004389) |
| 8/11/2010 | Sterling (…3826) | $24,123.44 | FA4U (002236004389) |
| 8/13/2010 | Sterling (…3826) | $35,977.04 | FA4U (002236004389) |
| 8/18/2010 | Sterling (…3826) | $25,211.60 | FA4U (002236004389) |
| 9/01/2010 | Sterling (…3826) | $43,184.01 | FA4U (002236004389) |
| 9/03/2010 | Sterling (…3826) | $47,511.49 | FA4U (002236004389) |
| 9/16/2010 | Sterling (…3826) | $12,614.95 | FA4U (002236004389) |
| 10/17/2010 | Sterling (…3826) | $25,186.62 | FA4U (002236004389) |
| 10/23/2010 | Sterling (…3826) | $14,985.00 | FA4U (002236004389) |
| 10/26/2010 | Sterling (…3826) | $33,375.81 | FA4U (002236004389) |
| 11/07/2010 | Sterling (…3826) | $26,684.52 | FA4U (002236004389) |
| 11/16/2010 | Sterling (…3826) | $45,093.92 | FA4U (002236004389) |
| 11/23/2010 | Sterling (…3826) | $26,568.98 | FA4U (002236004389) |
| 11/29/2010 | Sterling (…3826) | $66,233.00 | FA4U (002236004389) |
| 12/02/2010 | Sterling (…3826) | $61,031.60 | FA4U (002236004389) |
| 12/06/2010 | Sterling (…3826) | $20,404.20 | FA4U (002236004389) |
| 12/10/2010 | Sterling (…3826) | $15,816.00 | FA4U (002236004389) |
| 1/09/2011 | Sterling (…3826) | $51,061.89 | FA4U (002236004389) |
| 1/12/2011 | Sterling (…3826) | $45,155.49 | FA4U (002236004389) |
| 1/14/2011 | Sterling (…3826) | $48,401.12 | FA4U (002236004389) |
| 1/24/2011 | Sterling (…3826) | $44,061.99 | FA4U (002236004389) |
| 1/26/2011 | Sterling (…3826) | $42,723.03 | FA4U (002236004389) |
| 2/15/2011 | Sterling (…3826) | $33,593.05 | FA4U (002236004389) |
| 2/16/2011 | Sterling (…3826) | $48,445.39 | FA4U (002236004389) |
| 2/24/2011 | Sterling (…3826) | $38,728.75 | FA4U (002236004389) |

| 2/25/2011 | Sterling (…3826) | $30,672.64 | FA4U (002236004389) |
|---|---|---|---|
| 3/08/2011 | Sterling (…3826) | $29,358.16 | FA4U (002236004389) |
| 3/17/2011 | Sterling (…3826) | $58,899.20 | FA4U (002236004389) |
| 3/24/2011 | Sterling (…3826) | $58,234.04 | FA4U (002236004389) |
| 3/29/2011 | Sterling (…3826) | $34,698.04 | FA4U (002236004389) |
| 4/07/2011 | Sterling (…3826) | $62,633.24 | FA4U (002236004389) |
| 5/06/2011 | Sterling (…3826) | $57,658.16 | FA4U (002236004389) |
| 5/14/2011 | Sterling (…3826) | $67,228.28 | FA4U (002236004389) |
| 6/03/2011 | Sterling (…3826) | $58,911.72 | FA4U (002236004389) |
| 6/15/2011 | Sterling (…3826) | $31,420.96 | FA4U (002236004389) |
| 6/18/2011 | Sterling (…3826) | $49,769.72 | FA4U (002236004389) |
| 6/25/2011 | Sterling (…3826) | $34,610.68 | FA4U (002236004389) |
| 6/29/2011 | Sterling (…3826) | $25,580.56 | FA4U (002236004389) |
| 7/05/2011 | Sterling (…3826) | $24,828.28 | FA4U (002236004389) |
| 7/12/2011 | Sterling (…3826) | $16,965.76 | FA4U (002236004389) |
| 7/17/2011 | Sterling (…3826) | $23,572.72 | FA4U (002236004389) |
| 7/23/2011 | Sterling (…3826) | $51,662.14 | FA4U (002236004389) |
| 7/27/2011 | Sterling (…3826) | $59,957.08 | FA4U (002236004389) |
| 8/13/2011 | Sterling (…3826) | $49,365.92 | FA4U (002236004389) |
| 8/18/2011 | Sterling (…3826) | $21,358.69 | FA4U (002236004389) |
| 8/23/2011 | Sterling (…3826) | $49,487.30 | FA4U (002236004389) |
| 8/26/2011 | Sterling (…3826) | $28,706.34 | FA4U (002236004389) |
| 9/16/2011 | Sterling (…3826) | $29,253.44 | FA4U (002236004389) |
| 9/17/2011 | Sterling (…3826) | $55,753.44 | FA4U (002236004389) |
| 9/21/2011 | Sterling (…3826) | $52,918.52 | FA4U (002236004389) |
| 10/04/2011 | Sterling (…3826) | $53,848.28 | FA4U (002236004389) |
| 10/08/2011 | Sterling (…3826) | $33,247.48 | FA4U (002236004389) |
| 10/09/2011 | Sterling (…3826) | $33,247.48 | FA4U (002236004389) |
| 10/14/2011 | Sterling (…3826) | $27,855.53 | FA4U (002236004389) |
| 10/22/2011 | Sterling (…3826) | $47,986.67 | FA4U (002236004389) |
| 11/09/2011 | Sterling (…3826) | $49,383.44 | FA4U (002236004389) |
| 12/04/2011 | Sterling (…3826) | $34,390.00 | FA4U (002236004389) |
| 12/07/2011 | Sterling (…3826) | $14,675.32 | FA4U (002236004389) |
| 1/13/2012 | Sterling (…3826) | $54,093.60 | FA4U (002236004389) |
| 1/25/2012 | Sterling (…3826) | $51,836.00 | FA4U (002236004389) |
| 2/15/2012 | Sterling (…3826) | $28,957.44 | FA4U (002236004389) |
| 2/17/2012 | Sterling (…3826) | $29,299.00 | FA4U (002236004389) |
| 2/26/2012 | Sterling (…3826) | $59,618.60 | FA4U (002236004389) |
| 3/15/2012 | Sterling (…3826) | $25,178.63 | FA4U (002236004389) |
| 3/17/2012 | Sterling (…3826) | $24,835.12 | FA4U (002236004389) |
| 3/23/2012 | Sterling (…3826) | $57,217.03 | FA4U (002236004389) |
| 4/01/2012 | Sterling (…3826) | $26,036.12 | FA4U (002236004389) |
| 4/14/2012 | Sterling (…3826) | $56,380.66 | FA4U (002236004389) |
| 4/24/2012 | Sterling (…3826) | $70,589.52 | FA4U (002236004389) |
| 5/20/2012 | Sterling (…3826) | $39,112.49 | FA4U (002236004389) |
| 5/26/2012 | Sterling (…3826) | $59,075.59 | FA4U (002236004389) |
| 6/06/2012 | Sterling (…3826) | $53,944.16 | FA4U (002236004389) |
| 6/22/2012 | Sterling (…3826) | $38,987.48 | FA4U (002236004389) |
| 6/29/2012 | Sterling (…3826) | $51,227.12 | FA4U (002236004389) |

| 7/11/2012 | Sterling (...3826) | $51,829.64 | FA4U (002236004389) |
|---|---|---|---|
| 7/28/2012 | Sterling (...3826) | $56,491.58 | FA4U (002236004389) |
| 8/10/2012 | Sterling (...3826) | $27,796.46 | FA4U (002236004389) |
| 8/12/2012 | Sterling (...3826) | $22,577.08 | FA4U (002236004389) |
| 8/15/2012 | Sterling (...3826) | $19,670.08 | FA4U (002236004389) |
| 9/07/2012 | Sterling (...3826) | $70,509.88 | FA4U (002236004389) |
| 9/08/2012 | Sterling (...3826) | $29,424.70 | FA4U (002236004389) |
| 9/13/2012 | Sterling (...3826) | $69,065.50 | FA4U (002236004389) |
| 9/29/2012 | Sterling (...3826) | $38,104.66 | FA4U (002236004389) |
| 10/06/2012 | Sterling (...3826) | $19,982.20 | FA4U (002236004389) |
| 10/14/2012 | Sterling (...3826) | $52,781.66 | FA4U (002236004389) |
| 10/20/2012 | Sterling (...3826) | $66,753.96 | FA4U (002236004389) |
| 10/27/2012 | Sterling (...3826) | $50,246.56 | FA4U (002236004389) |
| 11/07/2012 | Sterling (...3826) | $44,529.85 | FA4U (002236004389) |
| 11/14/2012 | Sterling (...3826) | $40,533.80 | FA4U (002236004389) |
| 11/28/2012 | Sterling (...3826) | $58,172.76 | FA4U (002236004389) |
| 12/10/2012 | Sterling (...3826) | $76,193.20 | FA4U (002236004389) |
| 1/24/2013 | Sterling (...3826) | $73,440.72 | FA4U (002236004389) |
| 1/31/2013 | Sterling (...3826) | $60,638.27 | FA4U (002236004389) |
| 2/13/2013 | Sterling (...3826) | $70,272.93 | FA4U (002236004389) |
| 3/6/2013 | Sterling (...3826) | $64,985.00 | FA4U (002236004389) |
| 3/17/2013 | Sterling (...3826) | $59,985.00 | FA4U (002236004389) |
| 3/23/2013 | Sterling (...3826) | $52,016.50 | FA4U (002236004389) |
| 4/10/2013 | Sterling (...3826) | $74,257.88 | FA4U (002236004389) |
| 4/22/2013 | Sterling (...3826) | $52,267.34 | FA4U (002236004389) |
| 5/7/2013 | Sterling (...3826) | $70,107.00 | FA4U (002236004389) |
| 5/22/2013 | Sterling (...3826) | $60,353.35 | FA4U (002236004389) |
| 6/2/2013 | Sterling (...3826) | $66,469.25 | FA4U (002236004389) |
| 6/12/2013 | Sterling (...3826) | $66,781.45 | FA4U (002236004389) |
| 6/27/2013 | Sterling (...3826) | $73,579.15 | FA4U (002236004389) |
| 7/10/2013 | Sterling (...3826) | $60,888.00 | FA4U (002236004389) |
| 7/26/2013 | Sterling (...3826) | $66,542.40 | FA4U (002236004389) |
| 8/10/2013 | Sterling (...3826) | $80,775.19 | FA4U (002236004389) |
| 9/3/2013 | Sterling (...3826) | $72,162.60 | FA4U (002236004389) |
| 9/18/2013 | Sterling (...3826) | $72,367.80 | FA4U (002236004389) |
| 9/30/2013 | Sterling (...3826) | $59,132.20 | FA4U (002236004389) |
| 10/17/2013 | Sterling (...3826) | $69,703.00 | FA4U (002236004389) |
| 11/12/2013 | Sterling (...3826) | $58,777.80 | FA4U (002236004389) |
| 12/02/2013 | Sterling (...3826) | $37,468.40 | FA4U (002236004389) |
| 12/04/2013 | Sterling (...3826) | $66,196.00 | FA4U (002236004389) |
| 12/10/2013 | Sterling (...3826) | $82,146.40 | FA4U (002236004389) |
| 1/24/2014 | Sterling (...3826) | $40,883.60 | FA4U (002236004389) |
| 3/25/2014 | Sterling (...3826) | $82,150.40 | FA4U (002236004389) |
| 3/26/2014 | Sterling (...3826) | $71,160.40 | FA4U (002236004389) |
| 3/27/2014 | Sterling (...3826) | $77,127.60 | FA4U (002236004389) |
| 3/31/2014 | Sterling (...3826) | $69,757.20 | FA4U (002236004389) |
| 4/1/2014 | Sterling (...3826) | $70,249.20 | FA4U (002236004389) |
| 5/20/2014 | Sterling (...3826) | $66,952.00 | FA4U (002236004389) |
| 5/22/2014 | Sterling (...3826) | $53,276.12 | FA4U (002236004389) |

| 6/11/2014 | Sterling (...3826) | $71,600.52 | FA4U (002236004389) |
|-----------|--------------------|------------|---------------------|
| 6/17/2014 | Sterling (...3826) | $80,380.32 | FA4U (002236004389) |
| 7/07/2014 | Sterling (...3826) | $73,308.72 | FA4U (002236004389) |
| 7/17/2014 | Sterling (...3826) | $88,745.48 | FA4U (002236004389) |
|           |                    |            |                     |
|           |                    | $6,355,599.89 |                  |

12. Of the 298 shipments declared by Sterling from FA4U over that same time period, USFWS agents and inspectors intercepted five shipments. Upon inspection, these intercepted shipments were to found to contain imitation Native American-style jewelry consistent with what agents have observed for sale and purchased as purported genuine Native American jewelry at retail stores across New Mexico. And although the invoices confirm that the imitation Native American-style jewelry was manufactured in the Philippines, none of the jewelry was indelibly marked with its country of origin as required by law. In fact, all of the imported jewelry inspected by USFWS, which was indelibly stamped with various initials and Native American symbols, was placed inside plastic bags outfitted with "Made in Philippines" decals. The jewelry could be easily separated from the plastic bags and it would be impossible for an unsuspecting consumer to determine the jewelry's country of origin.

13. For example, USFWS Wildlife Inspectors (WI) stationed at the port of Louisville, KY, inspected Sterling shipments imported from FA4U on May 29, 2012 and July 30, 2012. During these inspections, the WIs photographed items contained in the shipments for my review. In these cases, I noted that the jewelry appeared to be Native American-style. The pieces of jewelry were engraved with symbols or initials and the bags that contained the jewelry were affixed with "Made in Philippines" decals. None of the items in the shipment was indelibly marked with country-of-origin information as required by 19 U.S.C. § 1304. The importer of record for the shipments was listed in import declarations as Sterling/ Sheda Khalaf and the exporter of record was listed as FA4U.

### *Examples of How Sterling's Imported Jewelry is Sold in Violation of 18 U.S.C. § 1159*

14. Throughout the investigation, records were obtained which identified several retail businesses that purchased jewelry from Sterling. Included in these businesses are Sundancer Jewelry (Albuquerque, NM), Gallery 8 and Galleria Azul (Albuquerque, NM and Scottsdale, AZ) and Bullion Jewelers (Breckenridge, CO).

### *Sundancer Jewelry*

15. Sundancer is a retail location located at 202 San Felipe NW, Ste. A in the 'Old Town' portion of Albuquerque, NM. Mohammad R. Sharifi is listed as the President, Zahir Sharifi is listed as Vice President/ Secretary, and Steve Sharifi as Director of Finance.

6

16. On January 28, 2014, records were obtained which included a partial Sterling invoice titled, "Sold to: Sundancer Jewelry (GSNM)." The partial invoice detailed two hundred and thirteen (213) pieces of jewelry with a total amount of $9264.00.

17. On October 17, 2014, I visited Sundancer in a covert manner and observed various pieces of jewelry, offered for sale, which were consistent with that which is imported by Sterling from the Philippines. None of these items were marked in any way to inform the customer that they were manufactured in the Philippines. Soraya Sharifi was working in the store at the time and helped me during the contact. I asked to look at some bracelets which I recognized as being consistent with Sterling imports.



Sundancer Purchase            Sterling Import

18. Specifically, I recognized the inlaid pueblo design, and the unique symbols and the "CR" initials stamped on the on the inside of the bracelet.

19. I also recognized several rings to be consistent with those imported by Sterling. Specifically, I recognized the "cornrow" inlaid design and the initials "CK" stamped on the inside of the rings.



Sterling Import

7



Sundancer Purchase

20. Soraya told me that the rings were Zuni made and that the inlaid jewelry was Zuni and the single stone jewelry was Navajo. I then asked to look at a necklace and earring set which I recognized as being consistent with a Sterling import. Specifically, I recognized the pendant design and "NT" initials on the back of the item.



Sundancer Purchase

Sterling Import

21. Soraya told me that the necklace and earrings were Navajo-made. I motioned to the necklace and confirmed that it was Navajo, to which she agreed. I then asked if both the bracelet and ring were Zuni-made and Sharifi confirmed that they were. Soraya went on to say that she

has had the store for three (3) years but her family has been in the jewelry business for twenty (20) years. Soraya then explained that she has, "some Navajos in the back that …hand make pieces." I purchased the jewelry with a credit card for a total of $1001.52.

22. An examination of financial records revealed approximately $70,255 in payments from Abdul Sharifi and Soraya Sharifi, d.b.a. Sundancer / G S New Mexico Silver, to Sterling. The payments were made by checks drawn on Sundancer and G S New Mexico Silver accounts with Bank of America (Acct. # 439004433752 and 000119600617, respectively). The payments were made to Sterling account numbered **435017473826**.

| Date | Check Signer / Notes | Amount | Payee |
|------|----------------------|--------|-------|
| 10/2/2012 | Soraya Sharifi (…3752) / Silver Jewelry | $7,000 | Sterling (435017473826) |
| 10/3/2012 | Soraya Sharifi (…3752) / Inv. #1447 | $5,048 | Sterling (435017473826) |
| 1/19/2013 | Abdul Sharifi (…3752) | $17,656 | Sterling (435017473826) |
| 5/19/2013 | Abdul Sharifi (…0617) / Silver Jewelry | $4,506 | Sterling (435017473826) |
| 9/17/2013 | Abdul Sharifi (…0617) / Silver Jewelry | $6,222 | Sterling (435017473826) |
| 3/22/2014 | Abdul Sharifi (…0617) / Silver Jewelry | $10,737 | Sterling (435017473826) |
| | | $51,169 | |

**Bullion Jewelers**

23. Similarly, I observed Sterling-imported jewelry being sold as Native American-made jewelry at Bullion Jewelry, which is located at 121 South Main St. in Breckenridge, CO. Open source queries list Taha Shawar as the registered agent for the business.

24. During the course of this investigation email records were obtained which revealed communications between Taha Shawar (Shawar) and Nader Khalaf of Sterling. Specifically, on 7/23/2013, Shawar initiated an email string to Sterling stating the following:

> [**From** Shawar **To** Sterling]
> "Nader please make sure they stamp the item with letters E.Y.
> Thanks very much
> Best Regards
> Taha"

> [**From** Sterling **To** FA4U]
> "Ok, please make but be sure to make initials E.Y. Not urgent, just send with the next shipment. Thank You!"

> [**From** FA4U **to** Sterling]
> "Noted sir, How many the qty & the colors?"

In the emails noted above, Shawar requests that the jewelry he has ordered be stamped with the specific initials, "E.Y.," to which, Sterling and FA4U agree.

25. The email is evidence of wire fraud in violation of 18 U.S.C. § 1343 committed in furtherance of the scheme and artifice to fraudulently sell Filipino-made jewelry as Native

American-made in violation of 18 U.S.C. § 1159.

26. An invoice dated 5/31/2010, from Sterling to Bullion, was also obtained. The invoice details one thousand two hundred and fifty-four (1,254) pieces of jewelry for a total of $49,548.08.

27. On August 5, 2014, I and another USFWS SA visited Bullion in a covert capacity. Taha Shawar, was present at the business and spoke with the SAs throughout the contact. I observed several glass cases filled with jewelry which was offered for sale. The majority of the jewelry appeared to be of Native American- style and much of it appeared consistent with Sterling importations.

28. The SAs looked at a selection of jewelry in a showcase located at the front of the store. Shawar told the SAs that the jewelry they were looking at was made by the Navajo artist, Edison Yazzie. The jewelry had the initials, "E.Y." stamped into it. Additionally, an artist biography for Edison Yazzie, a Navajo jeweler, was displayed next to the jewelry.

29. I asked to look at a selection of rings which I recognized as being consistent with those imported by Sterling. The rings had the same inlaid design and stamped raincloud symbol on the inside. When asked about the raincloud symbol, Shawar told me that the symbol is the artist's trademark. Shawar went on to say that the rings were original pieces handmade by a Zuni artist. I asked Shawar if he knew the artist by name. Shawar told me that his father, Asad Shawar, does the buying and knows the artist's names but Shawar does not. The SAs then looked at a butterfly necklace with the letters, "E.Y." stamped in the back. The other USFWS SA asked Shawar about the letters and Shawar responded that they stand for, "Edison Yazzie." The butterfly pendant matched an



Bullion Purchase

image meant to be shared with the "special customer," almost exactly. I observed several pueblo scene bracelets which were consistent with Sterling imports, as well. The bracelets were similar in their inlay design and were stamped and initialed on the inside in the exact same manner as the Sterling items.



Sterling Import

Bullion Purchase

10

Shawar told me that the bracelets were Zuni made.  Shawar told the SAs that his father supplies jewelry to a lot of Colorado, Montana and Western Canada (Alberta and British Columbia). Shawar said that his father has been buying this jewelry from the artists for approximately 40 years.  Shawar went on to say that his father knows the artist's kids and grandkids, in some cases.

       30.     I also recognized an inlaid bear figure as being consistent with a reference made in a Sterling  email communication obtained during the course of the investigation.  The figures mentioned in the emails were manufactured in the Philippines by FA4U and imported by Sterling . The Bullion bear figure was adorned with a, "GAZING GRIZZLY by Stoneface Collection," nameplate.  Shawar told me that the bear was a piece of art and was Zuni made. Shawar also said that this was a "one-of-a-kind piece," and the name on the back of the statue, "M. Dumabok," was the name of the Zuni artist.  SHAWAR told me that he gets the statues once a year.

       31.     Taha sold the jewelry and the bear figure to me using via credit card transaction in violation of 18 U.S.C. §§ 1159 and 1343.

       32.     Some of the recovered email communications and documents regarding the bear figure are summarized below:

    a.   An email, dated March 9, 2010, from FA4U which includes names of the inlayers working at the Filipino factory.  Included in the list of names is, "Marcelo Dumabok."  This name corresponds to the name on the bear figure purchased at Bullion.

    b.   An email dated, November 22, 2010, from Nader Khalaf (Sterling) to FA4U, detailing resin sculptures which were shipped to the Philippines to be inlaid.

    c.   An email dated, November 27, 2010, from Nader Khalaf (Sterling) to FA4U stating,
*"Just a reminder, please SAVE the boxes of the sculptures when they arrive. WRITE ON EACH BOX WHICH SCULPTURE FITS IT. This way you can ship the finished sculptures back in the same boxes and they will stay protected from damage.*
*Thanks, Nader"*

    d.   An email dated, October 1, 2012, from FA4U to Sterling containing an invoice for a shipment of statues.  Twelve (12) of the items are described as, "ART-MISC BEAR."

    e.   An email dated, October 25, 2012, from FA4U to: info@globalcarrierphilsinc.com with an attached invoice detailing one hundred and seventy two (172), "Resin Art Sculptures."  Thirty-six (36) of those are described as "4.5" x 6" BEAR ON ROCK." The bear sculpture that I purchased measures 4.5" x 6".

    f.   An email dated February 21, 2013: from Sterling to FA4U stating:
*"I have ordered name plates for the sculptures. They should be ready in 2 weeks and I will ship them to you immediately.  Attached is a sample of what they will*

look like. Each type of sculpture will have a different name, but all of them will say "by Stoneface collection" at the bottom. Plates come with a sticky back that you can just stick to the base of each sculpture—and they'll look like the Remingtons! J

Thanks, Nader"

The nameplate is of the exact style of that which is attached to the bear figure I purchased.

g. An email dated, March 29, 2013 from Sterling to FA4U stating;
*"You'll be receiving labels to attach to the sculptures. Attached are the names so you know which one to attach. Thanks"*
The attached image document contains eight (8) images of various sculptures. Included in the images is a bear named, "Gazing Grizzly," the same as the bear sculpture I purchased. The bear in the image appears to be the same form as the bear that I purchased. However, the bear in the picture is not inlaid.

33.    This email is evidence of another instance of wire fraud in violation of 18 U.S.C. § 1343 committed in furtherance of the scheme and artifice to fraudulently sell Filipino-made jewelry as Native American-made in violation of 18 U.S.C. § 1159.

34.    An examination of financial records revealed approximately $35,000 in payments from Asad Shawar, d.b.a. Golden Eagle Jewelry and Giftware Ltd. to Sterling . Three of the payments were made by check drawn on a Golden Eagle Jewelry account with the Royal Bank of Canada (Acct. # 5051693). Another payment was made by Taha Shawar (for Asad Shawar) from a Bullion Jewelers Account with Community First bank (Acct. # 0107019648).

| Date | Check Signer | Amount | Payee |
|------|-------------|--------|-------|
| 6/30/2010 | Asad Shawar | $5,000 | Sterling (435017473826) |
| 7/31/2010 | Taha Shawar | $5,133.33 | Sterling (435017473826) |
| 7/30/2012 | Asad Shawar | $10,000 | Sterling (435017473826) |
| 5/22/2013 | Asad Shawar | $10,000 | Sterling (435017473826) |
| 6/5/2014 | Asad Shawar | $5,000 | Sterling (435017473826) |
|  |  | $35,133.33 |  |

35.    An examination of financial records revealed approximately $158,000 in payments from Asad Shawar and Taha Shawar, d.b.a. Bullion Jewelers, to Sterling . The payments were made by checks drawn on a Bullion Jewelers Account with Community First Bank (Acct. # 0107019648).

| Date | Check Signer / Notes | Amount | Payee |
|------|---------------------|--------|-------|
| 9/20/2011 | Asad Shawar | $10,000 | Sterling (435017473826) |
| 10/10/2011 | Asad Shawar | $10,000 | Sterling (435017473826) |
| 1/10/2012 | Taha Shawar | $9,131.50 | Sterling (435017473826) |
| 2/10/2012 | Taha Shawar | $9,131.50 | Sterling (435017473826) |
| 3/10/2012 | Taha Shawar / INV# 1346 & 1351 | $9,131.50 | Sterling (435017473826) |
| 4/10/2012 | Taha Shawar / INV# 1346 & 1351 | $9,131.50 | Sterling (435017473826) |
| 7/15/2012 | Taha Shawar / Jewelry | $6,666.66 | Sterling (435017473826) |
| 8/15/2012 | Taha Shawar / Jewelry | $6,666.66 | Sterling (435017473826) |

| 9/15/2012 | Taha Shawar / Jewelry | $6,666.66 | Sterling (435017473826) |
|---|---|---|---|
| 12/27/2012 | Taha Shawar | $6,178.66 | Sterling (435017473826) |
| 1/27/2012 | Taha Shawar | $6,178.66 | Sterling (435017473826) |
| 2/27/2012 | Taha Shawar | $6,178.67 | Sterling (435017473826) |
| 2/11/2013 | Taha Shawar | $2,300.00 | Sterling (435017473826) |
| 3/1/2013 | Taha Shawar | $2,400.00 | Sterling (435017473826) |
| 6/28/2013 | Taha Shawar | $9,175.00 | Sterling (435017473826) |
| 7/28/2013 | Taha Shawar | $9,175.00 | Sterling (435017473826) |
| 8/28/2013 | Taha Shawar | $9,175.00 | Sterling (435017473826) |
| 12/31/2013 | Taha Shawar | $8,108.00 | Sterling (435017473826) |
| 1/31/2014 | Taha Shawar / INV #1596 | $3,260.00 | Sterling (435017473826) |
| 1/31/2014 | Taha Shawar | $8,108.66 | Sterling (435017473826) |
| 2/10/2014 | Taha Shawar / INV # 1596 Paid In Full | $3,260.00 | Sterling (435017473826) |
| 2/28/2014 | Taha Shawar | $8,108.67 | Sterling (435017473826) |
| | | $158,132.30 | |

### Gallery 8 / Galleria Azul

36.     On September 10, 2012, I traveled to the port of Louisville, KY to personally inspect a Sterling shipment imported from FA4U via UPS #H896-7699-001. I noted that the jewelry appeared to be Native American-style in design. The pieces of jewelry were engraved with initials and/or symbols. Also, the bags of jewelry were affixed with "Made in Philippines" decals. None of the items in the shipment were indelibly marked with country-of-origin information as required by 19 U.S.C. §1304 and 19 C.F.R. § 134.43. The importer of record was listed as Sterling / Sheda Khalaf and the exporter of record was listed as FA4U. I documented the items within the shipment by photograph. While inspecting the shipment, I took note of a package of fifty-two (52) rings (Item # RNG-1325-MAN). All of the rings were similar in design, but twenty (20) of the rings were the same in that they were made in the "cornrow" style, used brown and black stones, and bore the initials, "CK," on the inside.



Sterling Import

I separated out these twenty (20) rings and applied ultraviolet visible ink to one side of each ring.



Ultraviolet ink
visible under
exposure to black
light

I then confirmed that the ink was visible using an ultraviolet light source after applying the ink. Finally, I repacked the items and sealed the boxes.

37.    On September 12, 2012, I conducted a surveillance of Sterling at 5815 Menaul Blvd. in Albuquerque, NM and at 10:06 AM, "KHALAF" signed for five (5) UPS shipments including H896-7699-001.

38.    On November 26, 2012, I observed several pieces of Native American-style jewelry offered for sale in the store, Gallery 8, which were consistent with those that were imported by Sterling. None of the jewelry in the store, that was consistent with the Sterling imports, was marked to notify the customer that it was made in the Philippines. Gallery 8 is located at 1919 Old Town Road, NW #8, Albuquerque, NM. The store employee told me that everything in the store was Indian (Native American) made except the amber jewelry. I observed two (2) rings which were identical to the rings I had covertly marked in the September 10, 2012 Sterling shipment (UPS #H896-7699-001). I asked to look at the rings and observed that they were inscribed with the initials, "CK," just as the Sterling rings had been.

39.    I was told that the rings were Navajo made. The employee told me that the manager would call me with the name of the "CK" artist. I was then told that the owner of Gallery 8 also owns another gallery, Galleria Azul, which was located just a few blocks away. I purchased the two (2) rings and other jewelry consistent with Sterling importations via credit card from Gallery 8 for a total of $689.08. After purchasing the items, I confirmed that the rings were, in fact, rings from the September 10, 2012 Sterling shipment (UPS #H896-7699-001) by exposing them to ultraviolet light and confirming the presence of ultraviolet visible ink.

40.    On November 30, 2012, I visited Gallery 8 in a covert manner. The manager was present at the store. I told the manager, that I had purchased two (2) rings a few days prior and

14

wanted to know the artist's identity. The manager told me that she had to get into the owner's (Nael Ali), computer to get the artist's name. Independent research confirmed that Ali is the owner of Gallery 8 and Galleria Azul in both Albuquerque and Scottsdale, AZ.

41. After leaving Gallery 8 on November 30, 2012, I visited Galleria Azul in a covert manner. I observed many of the same items that I had seen in Gallery 8, in Galleria Azul. I also saw another ring, identical to those I had marked in the Sterling shipment, for sale. The store employee explained that Galleria Azul had mostly the same items as were in Gallery 8. I asked about a turquoise ring which looked consistent to rings imported by Sterling on July 30, 2012.



Galleria Azul ring consistent with Sterling Import



Galleria Azul ring - "OY" Initials same as Sterling Import



Photograph taken during Sterling shipment inspection in Louisville, KY

Photograph taken during Sterling shipment inspection in Louisville, KY

"OY" initials same as Galleria Azul ring



The employee told me that the ring was made using "Cerillos" turquoise and that it was Navajo made. I observed that the ring was inscribed with the initials "OY" just as the Sterling rings were. The employee told me that the galleries (Gallery 8 and Galleria Azul) are owned by the same person and they interchange items and stock. I purchased the ring for a total of $96.30.

15

42.     On February 26, 2014, I visited Gallery 8 and Galleria Azul in a covert manner with another USFWS undercover agent.  I spoke to the manager while at Gallery 8.  The manager remembered me and told me to pick out the items I was interested in and then she would call Ali and, "take care of it."  I referenced a ring I was wearing (one of the marked rings which I purchased previously) and asked if they had any more in stock.  The manager said that she only had a similar type in stock, but not the same one.  I asked if Gallery 8 could contact the artist to get more produced.  The manager said they could contact the artist, "Calvin Kee," and see if that would be possible.  I was again told that all of the jewelry in the store was Navajo-made with the exception of three (3) pieces which were Zuni made.  The manager then said she would call Ali to determine final pricing on the jewelry.  The manager also said she would have Ali contact "Calvin Kee" to see about getting more jewelry.  The manager said that "Calvin Kee" is supposed to only supply Gallery 8 with his jewelry.  I then walked over to Galleria Azul.  While in the store, I observed  jewelry, pottery, and paintings for sale.  The jewelry was consistent with that which is imported by Sterling.  I was told that all of the jewelry was Navajo made.  Another USFWS SA then asked for a list of artists and the corresponding initials.  The store employee told me that she had a list and could make a copy.  Additionally, the employee made the following statements regarding the jewelry and the artists' names and initials:

- o   "Sometimes I forget and make stuff up.  I know that's bad."
- o   "We make it up.  I'm not gonna lie ... You guys are in the business, you have to understand." (***Agent's Note***:  This statement was made in response to the SA's question about what they do when artists have the same initials.)
- o   "It is all handmade . . . I'm not lying about that . . ."
- o   "It's all locally made."

The SAs then returned to Gallery 8 and the manager told me that they have a third shop, called Galleria Azul, in Scottsdale, Arizona.  The manager told me that she spoke to Ali and she would take a photograph of my "Calvin Kee" ring and get more made.  The manager called Ali using the wireless telephone in the store.  After getting off the telephone, the manager told me that Ali said they would get in touch with the artist, "Calvin Kee."  I asked for a key to the symbols on some of the rings.  The manager explained that the feather symbol is for the Yazzie family, "A.A." corresponds to Juan Armas, the Yucca symbol corresponds to Ardale, and "O.Y." corresponds to Olivia Yazzie.  I recognized all of these symbols and initials as consistent with symbols on jewelry imported by Sterling.  The manager then took photographs of my ring, using her cell phone, to show to Ali.

43.     I placed an order for ten (10) copies of the ring that the manager photographed and ten (10) additional "Calvin Kee" rings.  I then purchased five (5) rings with "C.K." initials, one (1) ring with a Yucca symbol, one (1) ring with "N.B." initials, one (1) ring with "O.Y." initials, three (3) rings with raincloud symbols, and one (1) ring with a feather symbol for $1116.  The manager said that it would take at least three (3) weeks for the ordered rings to be produced.

44.     On April 2, 2014, a USFWS SA contacted the manager at Gallery 8 via telephone.  The agent inquired about the status of the rings that were ordered on February 26, 2014.  The manager told the agent that the rings were still being produced.  Additionally, the manager said that she did not want to rush the artist because the SAs desire a high quality product.

45.     Open source research did not reveal any Navajo artists named Calvin Kee.  In addition, I requested the Department of Interior, Indian Arts and Crafts Board to confirm any known Native American artists with the name, Calvin Kee.  Their research returned no results for that name.

46.     On May 29, 2014, I visited Galleria Azul in Scottsdale, Arizona, in a covert manner.  I entered the store and observed Ali working behind the counter in the store.  I observed jewelry offered for sale in the store which was consistent with that imported by Sterling.  I introduced myself and told Ali that I had placed an order for "Calvin Kee" rings at the Albuquerque store.  Ali immediately knew what I was referring to.  Ali told me that he had more "Calvin Kee" rings if I wanted them.  Ali told me that the order of rings had arrived a week ago and were currently at his Albuquerque store.  Ali told me that all of the jewelry in the store is Native made.  Ali told me that people in Albuquerque want all Native made items so that is what he carries in his Albuquerque stores, as well.  Finally, I purchased a ring from Ali which was consistent with those imported by Sterling.  Ali told me that the ring was Navajo made and I purchased the item for a total of $120.

47.     On May 31, 2014, I visited Gallery 8 in Albuquerque, New Mexico, in a covert manner.  The manager told me that Ali got in touch with the artist and that "Calvin Kee" did not have a lot of the stones available so he couldn't make them all in brown (the color of the original ring to be copied for the order).  The manager told me that "Calvin Kee" made twenty (20) rings in total.  The manager told me that the rings retail for $270 but were sold to me for $90 each.  The manager told me that she would FedEx the items to New York for me and that this was a normal business practice for the store.  I paid a total of $1800 for the rings and $20 for the shipping by credit card transaction.

48.     On June 5, 2014, a USFWS SA stationed in Valley Stream, NY contacted me and notified him that the Gallery 8 shipment had been delivered, via FedEx.

49.     On June 11, 2014, I received a FedEx package from a USFWS SA stationed in Valley Stream, NY.  The original FedEx package which was sent from Gallery 8 to New York was unopened.  Upon opening the package, I found it to contain twenty (20) rings with the initials "C.K." stamped into them.

50.     An examination of financial records revealed approximately $58,000 in payments from Nael Ali, d.b.a. Gallery 8/ Galleria Azul, to Sterling.  The payments were made by checks drawn on Gallery 8 and Galleria Azul accounts with Bank of Albuquerque (Acct. # 8092233979 and 8093377451, respectively).   As Sterling is solely in the business of importing and subsequently selling their Filipino made Native American-style jewelry, there is reason to believe that these payments were made for jewelry imported from FA4U.

| Date | Check Signer / Notes | Amount | Payee |
|------|---------------------|--------|-------|
| 3/18/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 4/7/2011 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 4/15/2011 | Nael Ali (…3979) | $2,300 | Sterling (435017473826) |
| 4/29/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 5/7/2011 | Nael Ali (…3979) | $2,507 | Sterling (435017473826) |
| 5/15/2011 | Nael Ali (…3979) | $2,300 | Sterling (435017473826) |
| 6/15/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 7/15/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 8/1/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 11/18/2011 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/18/2011 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/25/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 12/2/2011 | Nael Ali (…3979) | $416 | Sterling (435017473826) |
| 12/2/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 12/10/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 12/16/2011 | Nael Ali (…3979) | $555 | Sterling (435017473826) |
| 1/8/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 1/10/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 2/8/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 3/10/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 4/29/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 7/5/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 7/18/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 7/29/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 8/08/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 8/18/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 8/28/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/3/2012 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 11/4/2012 | Nael Ali (…3979) | $1,571 | Sterling (435017473826) |
| 12/5/2012 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 12/5/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 7/25/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 7/28/2013 | Nael Ali (…3979) | $1,250 | Sterling (435017473826) |
| 8/16/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 8/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 9/18/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 9/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 10/15/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 10/18/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 11/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 11/15/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 11/15/2013 | Nael Ali (…7451) | $1,500 | Sterling (435017473826) |
| 11/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |

| 1/20/2013 | Nael Ali (…7451) | $1,500 | Sterling (435017473826) |
|-----------|------------------|--------|-------------------------|
| 10/7/2014 | Nael Ali (…7451) | $690 | Sterling (435017473826) |
| 10/8/2014 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 10/18/2014 | Nael Ali (…7451) | $1,000 | Sterling (435017473826) |
| | | **$56,964** | |

51.     Apart from the three examples highlighted above, USFWS SAs have purchased jewelry consistent with Sterling imports that were sold in violation of 18 U.S.C. § 1159 from eight different retail stores or individuals.

52.     Financial investigation revealed that each of those stores and individuals purchased jewelry from Sterling.  In fact, an analysis of Sterling's bank account reveals that the majority of the $9.3 million that has flowed into that account from October 1, 2010 to July 31, 2014 is related to the sale of Native American-style, Sterling imported jewelry.

53.     Sterling's latest import from FA4U was declared on October 16, 2015.  As of October 21, 2015, Sterling continues to operate its business at 5815 Menaul Blvd., Albuquerque, NM 87110.  Most recently, I observed Sterling-imported jewelry offered for sale at Momeni's Gallery and Gold House LLC located in Old Town Santa Fe, NM on October 20, 2015.  Furthermore, on September 12, 2015, I observed a subject known to wholesale Sterling-imported jewelry at Sterling's business location engaging in activity consistent with loading into a van that the subject uses to transport Sterling-imported jewelry.  Afterwards, on September 13, 2015, I observed packaging in Sterling's trash dumpster consistent with that seen during the import inspections.

54.     Based on the nature of Sterling  business relationship with FA4U, the contents of the 295 imports they have declared from FA4U, the regularity and amounts of wire transfers to FA4U's Philippine account, and the buys and observations I have made at retail stores that sell Native American-style, Sterling -imported jewelry, I have probable cause to believe that the jewelry that was purchased by Sterling from FA4U with funds in account **435017473826** was then resold to wholesalers and retailers, and that the funds obtained from those wholesalers and retailers were deposited into account **435017473826**.  Indeed, based on my examination of the deposits listed in Attachment B, I know that virtually all deposits into account **435017473826** comprised checks from businesses and individuals that sell Native American-style, Sterling imported jewelry.

55.     The income derived from the sale of the Filipino-made, Native American-style jewelry, which was imported in violation of 18 U.S.C. 542 and sold in violation of 18 U.S.C. 1343, was then Sterling's **435017473826** bank account.  Sterling in turn transferred a total of **$6,355,599.89** in funds from its **435017473826** bank account to FA4U's Philippine-based bank account 130 times in amounts exceeding $10,000.  Thus, there is probable cause to believe that Sterling's **435017473826** bank account is property involved in money laundering.

56.     A warrant authorizing the seizure of property for criminal forfeiture is appropriate if an order under 21 U.S.C. § 853(e) "may not be sufficient to assure the availability of the property for forfeiture."  See 21 U.S.C. § 853(f).  Based on my training and experience, I know

that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder.  A seizure warrant assures that the funds will be available for forfeiture.

## JURISDICTION TO ISSUE OUT-OF-DISTRICT WARRANT

57.      18 U.S.C. 981(b)(3) provides jurisdiction for the issuance of seizure warrants for property located in other districts:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found[.]

58.      Issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which . . . any of the acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A).  As  provided in 18 U.S.C. § 981(b)(3), the warrant may be "executed in any district in which the property is found."

**CONCLUSION**

59.     Based on the foregoing, I respectfully request that the Court issue a warrant authorizing the seizure of Sterling's Bank of America bank account numbered **435017473826**, pursuant 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), as well as authorize the seizure and criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), and 981(a)(1)(C) and 28 U.S.C. §2461(c). I also request that a seizure warrant direct the above listed financial institution at which Sterling's **435017473826** bank account is maintained to do the following:

a.  Freeze the contents of the account in place and to refuse the withdrawal of any amount from the account by anyone other than USFWS/OLE, and

b.  While any contents of the account are frozen in place to accrue deposits, interest, and dividends, until USFWS/OLE directs that the contents of the account be finally liquidated and no contents remain. Freezing the contents could occur in the event the bank is unable to provide the funds immediately to USFWS/OLE and therefore restricts the removal and/or dissipation of the funds by the account holder(s).

60.     Finally, I request this Affidavit, Application, and the Court's Warrant be placed under seal. I declare under penalty of perjury the statement above is true and correct to the best of my knowledge and belief.

Respectfully submitted,
Russell J.L. Stanford
Special Agent
USFWS/OLE

Subscribed and sworn to before me
on October 26, 2015:   at 2:21 pm

_____
UNITED STATES MAGISTRATE JUDGE

21